NO.
12-05-00351-CR

 

IN THE COURT OF APPEALS 

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

ROBERT D. COURSON, JR.,         §                      APPEAL
FROM THE 114TH

APPELLANT

 

V.        §                      JUDICIAL DISTRICT COURT OF

 

THE
STATE OF TEXAS,

APPELLEE   §                      SMITH
COUNTY, TEXAS

                                                                                                                                                           


MEMORANDUM OPINION

            Appellant
Robert D. Courson appeals his conviction for felony driving while
intoxicated.  In two issues, Appellant
challenges the legal and factual sufficiency of the evidence supporting his
conviction.  We affirm.

 

Background

            Appellant was charged by indictment
for the third degree felony offense of driving while intoxicated.   The charge was enhanced to a felony because
Appellant had two prior convictions for driving while intoxicated.  See Tex.
Pen. Code Ann. § 49.09(b) (Vernon Supp. 2005).  He pleaded “not guilty” and elected to have a
jury decide his guilt or innocence. 
Appellant stipulated to both of his prior convictions.

            At trial, the State called Donald
Rutledge, a City of Tyler police officer. 
On April 13, 2004, a concerned citizen called the Tyler Police
Department to report a possible DWI. 
Based on that call, Officer Rutlege received a dispatch around 2:00 that
afternoon to look for a man in a plaid shirt in close proximity to a Suburban
in the 400 block of Vine Street.  He
found the Suburban parked in the street and Appellant lying on the sidewalk,
either unconscious or asleep.  Lying
close to Appellant was a bottle of Glenlivet Scotch.  Officer Rutledge awoke Appellant.  He noticed a strong odor of alcohol emanating
from Appellant and that Appellant’s eyes were bloodshot, his speech was
slurred, and he had difficulty standing. 


            Appellant told Officer Rutledge that
he had been to “Fat Dog’s” on Lake Palestine to buy alcohol and had consumed a “couple
of shots of whiskey.”  The officer
performed three field sobriety tests on Appellant, and he failed all
three.  Officer Rutledge placed Appellant
under arrest based on the reported phone call from the citizen, his
observations at the scene, and Appellant’s response to the field sobriety
tests.  

            Officer Rutledge testified that in
addition to the bottle of scotch on the sidewalk, he saw a twelve pack of beer
in the Suburban.  He did not feel the
hood of the vehicle, but noticed that the front right wheel had some concrete
marks on it.  The officer conceded that
he never saw Appellant driving the vehicle. 
When he first approached Appellant, the engine of the vehicle was not
running.  The officer said that he found
the keys on the rear bumper of the Suburban. 
Although he was not sure, Officer Rutledge believed that Appellant had
placed them there after Appellant got up from the sidewalk.  After transporting Appellant to the Smith
County jail, the officer administered two breathalyzer tests.  Appellant’s results from the tests were .126
and .134. 

            The State next called LeeAnne
Praytor to testify.  On April 13, Praytor
was driving westbound on Houston Street when she saw a maroon Suburban swerving
in front of her.  It rubbed the curb and
crossed over into the oncoming traffic lane. 
She followed it as it turned “wide” onto Vine Street, leaving the proper
lane of travel and going into the opposite lane.  She saw the Suburban stop and park in the
street on Vine.  Praytor had to stop her
vehicle because Appellant parked the Suburban in the lane of traffic in front
of her.  As she drove her vehicle around
the Suburban, she saw Appellant in the driver’s seat.  She continued driving to the corner parking
lot where she turned her vehicle around to continue watching Appellant.   Praytor watched as Appellant exited from the
driver’s seat of the vehicle, staggered to the front of it, and fell onto the
sidewalk.  Praytor called the police on
her cell phone and reported the incident. 
She then drove back to the scene and gave the Suburban’s license plate
number to the police dispatcher.  She
remained at the scene for another thirty minutes as police questioned her.  

            After the State rested, Appellant
made a motion for an instructed verdict, which was denied.  Appellant then called Tanya Branam to
testify.  Branam is a cashier at Fat Dog
Beverages in Coffee City, Texas.  She
testified that it is a thirty minute drive from the store  to Tyler. 
Branam said that on the afternoon of April 13,  Appellant came into the store between 12:15
and 12:20.  He bought his “usual” – a
half case of Coors Light and a pint of Glenlivet scotch.  Branam had known Appellant for many years and
knew that he was a regular customer at the store.  She testified that on the day in question, he
was sober when he came into the store and that he was not drinking while he was
there.  Branam said that they talked for
five to ten minutes before he left the store. 
She did not see him driving that day nor could she say whether anyone
had driven him to the store.

            Matthew Gray testified that on April
13, he went to take his fiancé, Maxine Tant, to lunch.  Tant worked for Appellant at his bail bond
business.  Gray stated that Appellant
arrived at the office between 12:45 and 12:50 that afternoon, slammed his keys
on the desk, opened the bottle of liquor, and began drinking.  He seemed upset that Gray was there because
he and Gray did not like each other. 
Gray did not smell alcohol on Appellant nor did he seem to be
intoxicated.  After smoking a cigarette
and talking to Tant for a little longer, Gray left around 1:30 to walk to a
convenience store.  When he returned to
Appellant’s business between 1:50 and 1:55, he saw the police had arrived.  

            On cross examination, Gray testified
that he was also acquainted with Appellant because Appellant had provided bond
for his 2005 arrest for possession of a controlled substance.[1]  Conceding that Tant lives with him and helps
pay the bills, he said that Appellant still employs Tant and that he pays her
paycheck.  Gray admitted that if
Appellant lost his business, Tant would no longer be employed and that would
mean money out of his household budget. 
However, Gray reiterated his intense dislike for Appellant and stated he
would not lie for him.  He claimed to
have known Appellant for over a year.  In
that time, Gray said that he has seen Appellant drunk many times and knew that
he was an alcoholic.  But he maintained
that Appellant was not drunk when he arrived at the office on April 13.  

            Maxine Tant then testified that she
had worked for Appellant between three and four years. Tant said that on April
13, Appellant was having a bad day, went to run some errands around 10:45 that
morning, returned “sober” around 12:45 in the afternoon, and began drinking
scotch.  Tant said that Appellant played
games on his computer for two hours while he continued to drink.  She said that Appellant had almost finished
the bottle of scotch when he walked outside around 1:50 to retrieve the beer.  She saw him talking to his friend, Kay
Lievens, who had driven by and stopped in front of the office.  Tant said that she was watching out for him
because he was drunk and she did not want him to hurt himself on the broken
curbs and sidewalks in front of the office. 
Although she was filing and answering the phone, she kept looking
outside every fifteen to twenty seconds, checking on him.  After Lievens drove away, Tant saw that
Appellant was sitting down on the curb. 
The next time she looked up, she saw the flashing lights of the police
car.  








            Tant claimed that she did not see
Appellant operate his vehicle in any way after he arrived back at the office
around 12:45 that afternoon.  Tant said
that after Appellant had been arrested, she moved his vehicle closer to the
curb at the police officer’s request. 
Tant conceded that she had been convicted for possession of marijuana
and theft in the previous five years, but said she would not lie for
Appellant.  On cross examination, Tant
maintained that she looked at the clock when Appellant arrived and when he
walked outside.  She admitted that she
might have been confused about the time that Appellant spent playing computer
games, but estimated that the police arrived 
around 2:00.  She also conceded
that when Appellant returned from his errands at 12:45, he parked his vehicle
approximately three feet from the curb although there was plenty of room to
parallel park in front of the office.

            Kay Lievens testified that she has a
bail bond business and has known Appellant for over a year.  She considers her relationship with Appellant
to be “friendly competitors.”  On April
13, Lievens drove to Appellant’s office at approximately 1:52 to see why
Appellant had failed to show up for their lunch appointment.  When she arrived, she saw that Appellant’s
vehicle was parked too far from the curb and saw Appellant wandering around
outside, drunk.  Concerned that he might
be thinking about driving, she asked him where his keys were, but he did not
know.  Lievens never saw Appellant in his
vehicle, but he was carrying a green bottle of liquor in his hand.  On cross examination, Lievens conceded that
she did not know how long Appellant had been outside, if he had just driven to
the office, or how long his vehicle had been parked there.  She said that Appellant has much more
experience in the bail bond business than she and that he has been a source of
information for her.  

            At the conclusion of the
guilt/innocence phase, the jury found Appellant guilty.  After hearing evidence and argument from the
parties, the jury sentenced Appellant to six years of  imprisonment and assessed a $10,000.00
fine.  This appeal followed.

 

Sufficiency of the
Evidence

            In his two issues, Appellant
challenges the legal and factual sufficiency of the evidence supporting his
conviction.  He does not deny that he was
shown to be intoxicated, nor does he challenge the proof of his previous
convictions.  He contends, however, that
the evidence is legally and factually insufficient to sustain a conviction for
driving while intoxicated because the State failed to establish that he was
actually driving while intoxicated.    

Legal
Sufficiency

            Legal sufficiency is the
constitutional minimum required by the Due Process Clause of the Fourteenth
Amendment to sustain a criminal conviction. 
Escobedo v. State, 6 S.W.3d 1, 6 (Tex. App.–San Antonio
1999, pet. ref’d) (citing Jackson v. Virginia, 443 U.S. 307,
315-16, 99 S. Ct. 2781, 2786-87, 61 L. Ed. 2d 560 (1979)).  In reviewing a legal sufficiency challenge,
the appellate court examines the evidence in the light most favorable to the
judgment to determine whether a rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  Johnson v. State, 871 S.W.2d
183, 186 (Tex. Crim. App. 1993) (citing Jackson, 443 U.S. at 319,
99 S. Ct. at 2789).  The conviction will
be sustained “unless it is found to be irrational or unsupported by more than a
‘mere modicum’ of the evidence.”  Moreno
v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).  The jury is the exclusive judge of (1) the
facts, (2) the credibility of the witnesses, and (3) the weight to be given to
the testimony of each witness.  Barnes
v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994); Penagraph
v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981).  Any reconciliation of conflicts and
contradictions in the evidence is entirely within the jury’s domain.  Losada v. State, 721 S.W.2d
305, 309 (Tex. Crim. App. 1986).  The
jury is entitled to draw reasonable inferences from the evidence.  Benavides v. State, 763 S.W.2d
587, 588-89 (Tex. App.–Corpus Christi 1988, pet. ref’d).  A successful legal sufficiency challenge
results in the rendition of an acquittal by the reviewing court.  See Tibbs v. Florida, 457 U.S.
31, 41-42, 102 S. Ct. 2211, 2217-18, 72 L. Ed. 2d 652 (1982).

Discussion

            A person commits felony driving
while intoxicated if he operates a motor vehicle in a public place while
intoxicated and has been previously convicted at least twice for driving while
intoxicated.  See Tex. Pen. Code Ann. §§ 49.04,
49.09(b)(2) (Vernon Supp. 2005). 

            In support of his legal sufficiency
argument, Appellant cites two cases: Reddie v. State, 736 S.W.2d
923 (Tex. App.–San Antonio 1987, pet. ref’d) and Ballard v. State,
757 S.W.2d 389 (Tex. App.–Houston [1st Dist.] 1987, pet. ref’d).  In Reddie, the appellant was
found slumped over the driver’s wheel with the motor idling.  Reddie, 736 S.W.2d at
924-25.  The car was stopped in the
middle of the road in “park.”  Id.  One witness testified that the car had not
been at that location two and a half hours earlier, but there was no other
evidence as to how long the car had been parked on the road.  Id.  The court of appeals acknowledged that the
evidence showing that the motor was running and that the gear was in the park
position supported an obvious inference that the person found intoxicated and
sleeping behind the wheel was the person who had been driving it.  Id. at 926.  But the court found the evidence insufficient
because other reasonable hypotheses existed. 
In the absence of evidence showing how long the car had been at that
location, when the appellant became intoxicated, or whether the appellant was
the one who drove the car and parked it there, the court refused to infer that
he drove the car while intoxicated.  Id.
at 926-27.

            In Ballard, the
appellant was found unconscious and slumped over the driver’s wheel in a
vehicle with the engine still running, parked on the shoulder of the
highway.  Ballard, 757
S.W.2d at 390.  No evidence was presented
showing whether the appellant was intoxicated before the time the car was
parked, how long appellant had been intoxicated or in the car, or who had
parked the car. Id. at 391. 
Following the reasoning in Reddie, the court concluded
that the evidence was not legally sufficient to prove that the defendant
operated the car while intoxicated although there was ample evidence of
intoxication.  Id. at
391-92. 

            In 1991, the court of criminal
appeals abandoned the alternative reasonable hypothesis analysis applied in Reddie
and Ballard.  See Geesa
v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991), overruled in part
on other grounds, Paulson v. State, 28 S.W.3d 570, 571-72
(Tex. Crim. App. 2000).  Under that
analysis, the reviewing court accepted the inculpatory circumstances and then
considered whether a reasonable hypothesis other than guilt would also account
for such circumstances.  See Barton
v. State, 882 S.W.2d 456, 458 (Tex. App.–Dallas 1994, no pet.).  If the evidence did not exclude all
reasonable hypotheses raised by the evidence except the defendant’s guilt, the
evidence was legally insufficient.  Id.  Now, reviewing courts do not consider whether
the evidence eliminates all reasonable hypotheses other than guilt nor do they
disregard reasonable inferences.  Id.
at 459.  Instead, appellate courts
examine both direct and circumstantial evidence in the same manner, considering
the totality of the circumstances.  Id. 
As outlined above, when considering legal sufficiency, we examine the
evidence in the light most favorable to the judgment to determine whether a
rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt.  Johnson
v. State, 871 S.W.2d at 186. 
This standard supports the trial court’s responsibility, as the trier of
fact, to resolve conflicts in the testimony, to weigh the evidence, and to draw
reasonable inferences from basic facts to ultimate facts.  Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789.

            Praytor testified that she was
driving behind Appellant’s suburban and watched as he swerved  across the road into the oncoming lane of
traffic.  She followed him until he
parked his vehicle in front of his office. 
Praytor identified Appellant as the person she saw exiting the vehicle
from the driver’s seat, then walking to the sidewalk and falling down.  Praytor never lost sight of Appellant until
after a police officer was on the scene with Appellant.

            Viewing all of the evidence in the
light most favorable to the jury’s verdict, we conclude that the jury could
have reasonably determined beyond a reasonable doubt that Appellant was driving
the motor vehicle while intoxicated in a public place.  Therefore, we hold that the evidence was
legally sufficient to support the jury’s verdict.  We overrule Appellant’s first issue.

Factual
Sufficiency

            Turning to Appellant’s contention
that the evidence is not factually sufficient to support the jury’s verdict, we
must first assume that the evidence is legally sufficient under the Jackson[2]
standard.  See Clewis v. State,
922 S.W.2d 126, 134 (Tex. Crim. App. 1996). 
We then consider all of the evidence weighed by the jury that tends to
prove the existence of the elemental fact in dispute and compare it to the
evidence that tends to disprove that fact. 
See Santellan v. State, 939 S.W.2d 155, 164 (Tex.
Crim. App. 1997).  Although we are
authorized to disagree with the jury’s determination, even if probative
evidence exists that supports the verdict, see Clewis, 922 S.W.2d
at 133, our evaluation should not substantially intrude upon the jury’s role as
the sole judge of the weight and credibility of witness testimony.  Santellan, 939 S.W.2d at
164.  Where there is conflicting
evidence, the jury’s verdict on such matters is generally regarded as
conclusive.  See Van Zandt v. State,
932 S.W.2d 88, 96 (Tex. App.– El Paso 1996, pet. ref’d).  Ultimately, we must ask whether a neutral
review of all the evidence, both for and against the finding, demonstrates that
the proof of guilt is so obviously weak as to undermine our confidence in the
jury's determination, or the proof of guilt, although adequate if taken alone,
is greatly outweighed by contrary proof. 
Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).[3]  

            A verdict will be set aside “only if
the evidence supporting guilt is so obviously weak, or the contrary evidence so
overwhelmingly outweighs the supporting evidence, as to render the conviction
clearly wrong and manifestly unjust.”  Ortiz
v. State, 93 S.W.3d 79, 87 (Tex. Crim. App. 2002); see   Sims v. State, 99 S.W.3d 600,
601 (Tex. Crim. App. 2003).  A clearly
wrong and manifestly unjust verdict occurs where the jury's finding “shocks the
conscience” or “clearly demonstrates bias.” Zuniga, 144 S.W.3d at
481.  As the court of criminal appeals
explained in Zuniga, “There is only one question to be
answered in a factual sufficiency review: 
Considering all of the evidence in a neutral light, was a jury
rationally justified in its finding of guilt beyond a reasonable doubt?”  See id. at 484.  

Discussion

            In addition to the evidence already
discussed, the record contains some evidence in Appellant’s favor.  The record shows that Appellant was not
intoxicated when he arrived at the liquor store.  Appellant’s employee and her boyfriend both
testified that he arrived at the office around 12:45 p.m. and did not become
intoxicated until an hour later.  
Neither saw Appellant operate his vehicle in any way after that
time.  Officer Rutledge and Lievens also
testified that they did not see Appellant operating a vehicle.

            We have reviewed the record in its entirety.  The jury accepted the State’s version of the
facts and found against Appellant.  In
our evaluation, we should not substantially intrude upon the jury’s role as the
sole judge of the weight and credibility of witness testimony.  See Santellan, 939 S.W.2d at
164.  Further, where there is conflicting
evidence, the jury’s verdict on such matters is generally regarded as
conclusive.  See Van Zandt,
932 S.W.2d at 96.  Our review of the
record as a whole, with consideration given to all of the evidence, both for
and against the jury’s finding, has not revealed to us any evidence causing us
to conclude that the proof of guilt is so obviously weak or is otherwise so
greatly outweighed by contrary proof as to render Appellant’s conviction
clearly wrong or manifestly unjust. 
Therefore, we hold that the evidence is factually sufficient to support
the jury’s verdict.  We overrule
Appellant’s second issue.

 

Disposition

            Having overruled both Appellant’s
issues, we affirm the judgment of the trial court.

 

 

 

                                                                                                    SAM GRIFFITH   

                                                                                                               Justice

 

 

Opinion delivered July 31, 2006.

Panel
consisted of Worthen, C.J. and Griffith, J.

 

 

 

 

 

 

(DO
NOT PUBLISH)











[1] Since 1987, Gray has
been arrested for larceny, possession of marijuana, driving with a suspended
license, injury to a child causing bodily injury, assault, possession of a
controlled substance in penalty group 1, and evading arrest.  





[2] Jackson, 443 U.S. at 319, 99 S. Ct. at 2789. 





[3] However, “contrary
evidence does not have to outweigh evidence of guilt; it has to be only enough
to provide reasonable doubt.”  Zuniga
v. State, 144 S.W.3d 477, 483 (Tex. Crim. App. 2004).